**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Whaleco Incorporated,  )<br> )<br>         Plaintiff,  )<br> )<br>vs.  )<br> )<br> )<br>dltemuapp.com, et al,  )<br> )<br>         Defendants.  )<br> ) | No.  CV-23-02332-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Whaleco Inc.'s *Ex Parte* Emergency Motion for Temporary Restraining Order ("TRO") and, Upon Notice and Hearing, Motion for Preliminary Injunction. (Doc. 2).

**I.    BACKGROUND**

Plaintiff offers a shopping website and software application under the TEMU trademark, logo, and/or orange color scheme. On November 7, 2023, Plaintiff filed a Verified Complaint alleging that Defendants registered websites with domain names that infringe on the TEMU trademark. (Doc. 1). These domain names have been registered as: <dltemuapp.com>, <temudl.net>, <temu-win.com>, <istemusafe.pro>, <temuapp.info>, <temumodapk.com>, and <temu.markets> (the "Domain Names"). Plaintiff seeks this TRO to "hold and lock" the registrations, unmask the registrant of the Domain Names, and to suspend services to the websites associated with the Domain Names. For the following reasons, the Court grants this request in part.

///

## II. **LEGAL STANDARD**

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Where a movant seeks a mandatory—rather than a prohibitory—injunction, the request for injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).[2]

Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a TRO may be entered "without written or oral notice to the adverse party," Fed. R. Civ. P. 65(b). A TRO may issue, *ex parte*, only where: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any

---

[1] The Ninth Circuit observes a "sliding scale" approach, in that these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, by example, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

[2] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks omitted). "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014).

party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court may waive the bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

### III. DISCUSSION

#### A. The *Winter* Factors

##### i. Likelihood of Success on the Merits

Plaintiff's claims are likely to succeed on the merits. Plaintiff alleges several federal and state law claims for trademark infringement, cybersquatting, and trademark dilution. The Court begins with addressing Plaintiff's trademark infringement claims.

Plaintiff alleges trademark infringement claims under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and Arizona common law. To prevail on its trademark infringement claims, Plaintiff must prove: (1) that it has a protectible ownership interest in the marks; and (2) that Defendants' use of the mark is likely to cause consumer confusion, thereby infringing upon Plaintiff's rights to the marks. *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Plaintiff alleges that its affiliate, Five Bells Limited Company, granted it an exclusive license to use the TEMU trademark and logo. (Doc. 1 at 9–10; Doc. 1-1 at 35–77). Additionally, Plaintiff has shown that there is a likelihood that consumers may mistake the Domain Names for the TEMU website and software application because the word "temu" is used in all of the Domain Names and the websites include the TEMU trademark, logo, and/or orange color scheme. (Doc. 2 at 9). *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (addressing non-inclusive factors to consider when analyzing a likelihood of confusion).

Plaintiff also raises a cybersquatting claim under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125, which requires Plaintiff to prove Defendants had "a bad faith intent to profit from that mark" and "registers, traffics in, or uses a [protected] domain name." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1006 (9th Cir. 2023) (quoting §

1125(d)(1)(a)). As discussed above, Plaintiff has shown that the Domain Names were registered using a protected domain name. Moreover, there is sufficient evidence to show that Defendants acted in bad faith. *See* 15 U.S.C. § 1125(d)(1)(a) (listing several factors for bad faith). Defendants registered multiple domain names using the TEMU trademark shortly after the TEMU trademark received national attention when it was aired as an advertisement during the February 2023 Super Bowl. (Doc. 1 at 7). Moreover, the webpages connected to the Domain Names display that they are affiliated with the TEMU website and software application, indicating an attempt to profit from their success. Accordingly, it is likely that Defendants acted in bad faith when registering the Domain Names.

Finally, Plaintiff alleges trademark dilution claims under 15 U.S.C. § 1125 and Arizona common law. "A successful claim for federal trademark dilution requires that a plaintiff prove that: (1) it owns a famous trademark; (2) the famous mark is distinctive; (3) the defendant is using or has used in commerce an identical or nearly identical trademark; (4) the defendant began using the mark after the mark became famous; and (5) the defendant's use of the mark is likely to cause dilution by blurring or tarnishment." *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940 (S.D. Cal. 2013). Plaintiff alleges that Defendants began using the Domain Names after the TEMU trademark became famous. The earliest date for the registration of the Domain Names is August 2023 which is several months after the TEMU website and software application were nationally advertised during the February 2023 Super Bowl. (Doc. 2 at 11–12). Moreover, Plaintiff argues that its trademark is likely to be diluted because the Domain Names use the TEMU mark and brand which is likely to confuse consumers and deteriorate its association with genuine and legitimate services. (*Id.* at 9–10). The Court finds that Plaintiff's dilution claim will likely succeed on the merits.

### ii. Irreparable Harm

Plaintiff alleges that the Domain Names were created to "get consumers to unwittingly befall to identify theft, malware, or the other malfeasances" that would

ultimately leave consumers to believe that Plaintiff is responsible. (Doc. 2 at 14). This satisfies the irreparable harm requirement. *See Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 757 (9th Cir. 2018) ("'Evidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm,' so long as there is concrete evidence in the record of those things." (quotation and citation omitted) (alterations in original)).

### iii. Balance of Hardships and Public Policy

Plaintiff's brand reputation coupled with the potential risks of harm to the public outweigh the possible hardship that Defendants may suffer from having its Domain Names temporarily suspended. Accordingly, the Court finds that Plaintiff has sufficiently met all four prong elements that are required for a TRO to issue.

### B. *Ex Parte* TRO against Defendants

Plaintiff requests that the TRO issue against Defendants *without notice*, which creates an additional level of analysis for the Court. The Court finds that the applicable requirements are met. First, Plaintiff filed a verified complaint. (Doc. 1). Plaintiff also filed this Motion that—as discussed above—clearly shows that there is immediate and irreparable harm because the Domain Names are actively misleading consumers to believe that the websites are associated with Plaintiff. As to the second requirement, Plaintiff's counsel submitted a Declaration (Doc. 2-1 at 2–4) in which she certifies that she attempted to locate the identity of the registrants associated with the Domain Names. (*Id.* at 3). She explained that the Domain Names were registered through the domain name registrar Namecheap and are privately protected by Withheld for Privacy, a private registration service. (*Id.*). After reviewing the Namecheap Court Order & Subpoena Policy via Namecheap's website, Plaintiff's counsel discovered that "Namecheap will not disclose the identity of a customer who is protected by privacy services offered by Namecheap unless specifically required by U.S. court order, subpoena or other regulation to which we are subject." (*Id.*; Doc. 2-1 at 38). Plaintiff's counsel attests that there are no other alternative means of obtaining the registrant's contact information without a Court order. (*Id.*). Plaintiff's counsel also suggests that if Defendants receive notice, "the registrant

could sell and/or transfer the [Domain Names] to other persons, or move the [Domain Names] to another registrar outside of this Court's jurisdiction." (*Id.* at 3–4). All told, the Court is satisfied that Plaintiff has complied with Rule 65(b)'s requirements for an *ex parte* TRO against Defendants.

The Court also finds that it does not appear that Defendants would lose revenue earned directly from the Domain Names, as they are not commercial websites. Therefore, the Court determines that a minimal bond of $1,000 is appropriate.

### C. *Ex Parte* TRO against Non-Parties[3]

In addition to Defendants, Plaintiff also seeks to require non-party NameCheap to immediately "mak[e] the domain names non-transferrable" and "prevent[] any websites associated with the domain name from resolving when queried by a browser." (Doc. 10-1 at 3). Plaintiff also requests that the Court orders non-parties NameCheap and Withheld for Privacy to "unmask the registrant's identity and reveal all contact information provided by the registrant in registering the [Domain Names]." (*Id.*). Further, Plaintiff requests that this information be provided "within five (5) business days from the date of service in this Order." (*Id.*). Plaintiff's Motion did not address the Court's authority to issue a mandatory TRO against non-parties NameCheap and Withheld for Privacy. Thus, the Court will not hold the non-parties responsible for Defendants actions. *See Fornix Holdings LLC v. Unknown Party*, No. CV-22-00494-PHX-DLR, 2022 WL 992546, at *2 (Apr. 1, 2022) (finding "the Court cannot bind [non-parties, including Namecheap,] to a TRO absent them being named parties" without allegations that they "knew of the defendant's allegedly infringing conduct and nevertheless continued to provide services that facilitated that infringement."); *Boyko v. Kondratiev*, No. CV-23-01186-PHX-DLR, 2023 WL 5017198, at *4 (D. Ariz. July 14, 2023) ("This Court previously has rejected the argument that domain registrars necessarily act in concert or participation with a client who uses a domain to commit intellectual property violations."); *see Petroliam Nasional Berhad v.*

---

[3] Plaintiff indirectly requests a TRO against non-parties through its proposed order. (Doc. 10-1).

*GoDaddy.com, Inc.*, 737 F.3d 546, 551 (9th Cir. 2013). Accordingly, Plaintiff's request to issue an ex parte TRO against non-parties NameCheap and Withheld for Privacy is denied.

Accordingly,

**IT IS ORDERED:**

1. **TRO**: That Plaintiff's Motion for Temporary Restraining Order (Doc. 2) is **granted in part**. Defendants and their agents, servants, employees, and attorneys, and any other person or entity, acting in active concert with Defendants or under Defendants direction, with notice of this Order shall:

   i. be enjoined from taking any actions to transfer the Domain Names (<dltemuapp.com>, <temudl.net>, <temu-win.com>, <istemusafe.pro>, <temuapp.info>, <temumodapk.com>, and <temu.markets>) from its current registrar, NameCheap to any other registrar;

   ii. be enjoined from operating the Domain Names (<dltemuapp.com>, <temudl.net>, <temu-win.com>, <istemusafe.pro>, <temuapp.info>, <temumodapk.com>, and <temu.markets>);

   iii. be enjoined from using the TEMU trademark, logo, and/or orange color scheme in any domain names including the Domain Names (<dltemuapp.com>, <temudl.net>, <temu-win.com>, <istemusafe.pro>, <temuapp.info>, <temumodapk.com>, and <temu.markets>) at issue in this case and;

   iv. suspend the Domain Names (<dltemuapp.com>, <temudl.net>, <temu-win.com>, <istemusafe.pro>, <temuapp.info>, <temumodapk.com>, and <temu.markets>).

2. **TRO Against Non-Parties**: The Court denies any TRO requests against non-parties NameCheap and Withheld for Privacy.

3. **Preliminary Injunction**: The Court withholds ruling on whether Plaintiff's Motion should be granted to the extent it seeks a preliminary injunction.

4. **Notice**: That, no later than close of business on **November 13, 2023**, Plaintiff must provide Defendants with a copy of the following and file proof of such notice with the Court: (1) the Verified Complaint (Doc. 1); (2) the Motion for TRO and attachments (Doc. 2); and (3) this Order. To ensure that Defendants receive timely notice of this Order, Plaintiff may provide this notice via electronic mail.[4]

5. **Hearing**: That a Preliminary Injunction Hearing is set for **November 21, 2023 at 9:00 a.m.**, before the Honorable Judge Steven P. Logan, United States District Judge, in the Sandra Day O'Connor United States Courthouse, located at 401 West Washington Street, Phoenix, Arizona 85003, 5th Floor, Courtroom 501.

6. **Briefing**: That Defendants shall have until the close of business on **November 16, 2023** to file any Response to Plaintiff's Motion; Plaintiff shall have until the close of business on **November 20, 2023** to file any Reply in support of their Motion.

7. **Evidence**: That the parties shall attach any evidence supporting the arguments for the Court's consideration (including any exhibits and affidavits) to the briefing.

8. **Warning**: If Defendants do not respond to the Motion for a TRO/Preliminary Injunction or fail to appear at the above-scheduled hearing, the Court will deem such failure as consent to granting the motion, see LRCiv 7.2(i).

Dated this 9th day of November, 2023.

                                          Honorable Steven P. Logan
                                          United States District Judge

---

[4] To the extent that Plaintiff is seeking alternative service under Rule 4.1(k), the Court finds this request to be premature.